## CANTEBERRY *v.* STATE.[*]

(Division B. April 5, 1926.)

[107 So. 672. No. 25451.]

CRIMINAL LAW. *Testimony obtained by search, without warrant, of bundle tied to saddle on horse, on mere suspicion of liquor being there, is inadmissible.*

> Testimony obtained by search of a bundle of clothes tied to the saddle of defendant's horse, a personal private possession, was inadmissible; the officer having no right to make the search because not knowing there was liquor there, but merely suspecting it from impression of a bottle in the bundle, and because he smelled it before reaching the horse, and because he saw defendant reel when getting off his horse.

---

[*]Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 571, n. 93; Intoxicating Liquors, 33CJ, p. 674, n. 80; p. 679, n. 45, 56; On admissibility of evidence obtained in wrongful search, see notes in L. R. A. 1915B, 834; L. R. A. 1916E, 716; On admissibility of evidence obtained by illegal search and seizure, see notes in 24 A. L. R. 1408; 32 A. L. R. 408; 41 A. L. R. 1145; 10 R. C. L., p. 933; 2 R. C. L. Supp., p. 1112; 4 R. C. L. Supp., p. 679; 5 R. C. L. Supp., 572.

APPEAL from circuit court of Montgomery county.
HON. T. L. LAMB, Judge.

J. C. Canteberry was convicted of having intoxicating liquor in his possession, and he appeals. Reversed and remanded.

*McLean & Rowe,* for appellant.

This case comes with renewed interest by reason of the fact that it does not involve the search of an automobile, wagon, buggy, cart, or other vehicle, such as are governed by chapter 244, Laws of 1924. This case does not involve the search of the sacred precincts of the citizen's home or premises. This case involves the ques-

tion of the right of an officer to search, without warrant, the wearing apparel of a citizen of Mississippi.

While appellant was in a drug shore, the marshal, with a mere suspicion that a bottle of intoxicants might be concealed in appellant's jumper tied to appellant's saddle, went out to the horse, seventy-five yards distant from the marshal, for the purpose of searching that jumper for whisky or some intoxicant. The marshal did this without any search warrant. He admitted in his testimony that he did not know what was in the bottle until he got it. He testifies that he saw the print of something in the jumper that impressed him it was a bottle of whisky. But he could not tell when he left the store and began his unlawful search whether it was a bottle or a gourd. He did not know whether it was coal oil or water, when he began his search. He did not know and could not know that it was a bottle containing whisky, until he actually got it, according to his own testimony. Was the marshal justified in searching the jumper without a warrant because it showed the print of something like a bottle, or because the appellant staggered in getting down off of his horse, or as he walked a-way from his horse? Surely not.

*Butler* v. *State*, 135 Miss. 885, 101 So. 193, in our opinion, is full and ample authority for the reversal of the appellant's case. Indeed, the state's case against appellant is much weaker than in the Butler case, because the officer here did not even try to arrest the appellant on any charge or violation.

Was the offense of having intoxicating liquor in his possession unlawfully being committed by appellant in the officers presence? In answer to this question, see *Pickett* v. *State*, 99 Ga. 12, 25 S. E. 608, 59 Am. St. Rep. 226. It is clear here that to the officer's knowledge no offense was being committed in his presence, in legal contemplation, and if he could not have made an arrest for having intoxicating liquor in possession unlawfully without a warrant, then he could not make a search for it without a search warrant. When he made the search

without a warrant, he acted unlawfully and he should not have been permitted to testify to what he thus discovered. *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377; *Williams* v. *State,* 92 So. 584; *Butler* v. *State,* 93 So. 3; *Owens* v. *State,* 133 Miss. 753, 98 So. 233; *Smith* v. *State,* 133 Miss. 730, 98 So. 344; *Taylor* v. *State,* 134 Miss. 110, 98 So. 459; *Rignal* v. *State,* 134 Miss. 169, 98 So. 444; *Falkner* v. *State,* 134 Miss. 253, 98 So. 691; *McCarthy* v. *Gulfport,* 134 Miss. 632, 99 So. 501; *Cuevas* v. *Gulfport,* 134 Miss. 644, 99 So. 503; *Jordan* v. *State,* 135 Miss. 785, 100 So. 384; *Wells* v. *State,* 135 Miss. 764, 100 So. 674; *Butler* v. *State,* 135 Miss. 885, 101 So. 193; *Orick et al.* v. *State,* 105 So. 465; *Gardner* v. *State,* 105 So. 475; *Walter McDonald* v. *State,* 105 So. 552; *Iupe* v. *State,* 105 So. 520.

There is here involved the search of the appellant's private property or possession; to-wit, his jumper tied to his saddle, and appellant was not present and consenting to the search without a warrant. The same constitutional guaranty applies with equal force to a jumper as to private premises.

*J. A. Lauderdale,* assistant attorney-general, for the state.

The only question in this case is, was the testimony of C. W. Murphy, a witness for the state, admissible? Murphy was marshal of Kilmichael and also a deputy sheriff of Montgomery county. He saw the appellant ride into Kilmichael on a horse. He had a jumper tied to the horn of his saddle. When appellant dismounted from the horse, his actions in reeling and staggering about caused Murphy to believe that he was under the influence of intoxicating liquors. After appellant hitched his horse, witness saw the imprint of a bottle through the sleeve of the jumper. He went near the jumper and smelled the odor of intoxicating liquor. He then took possession of the jumper and found in said sleeve a bottle containing intoxicating liquor. This bottle was

stopped in the good old fashioned way by wrapping a rag around a corn-cob and placing it in the mouth of the bottle. This method of stopping the bottle would allow the odor from the whisky to so saturate the atmosphere that any good officer could smell the same and from the odor thereof swear that it was whisky.

The fact that defendant was under the influence of liquor; that the officer saw the imprint of the bottle in the jumper sleeve; that he smelled the odor of whisky emanating from the jumper; and that this jumper and whisky were in the possession of the defendant was sufficient evidence for the witness to know that the whisky was in the bottle and that it was in the possession of the defendant. *Mitchell* v. *State,* 92 So. 578. This testimony was, therefore, admissible.

Appellant was committing a crime in the presence of an officer and the officer knew that he was committing a crime, and he, therefore, had a right to arrest him and take possession of the property unlawfully possessed by the defendant and the possession of which constituted a crime. The fact that the officer took possession of the property first and then arrested the defendant could make no difference. *People* v. *Kamhout,* 227 Mich. 172; *U. S.* v. *Borkowski,* 268 Fed. 408; *Ferrell* v. *Commonwealth,* 204 Ky. 548, 264 S. W. 1078.

My contention is that the officer knew that a crime was being committed, that he had a right to take possession of the property, the possession of which constituted a violation of the law, and that this knowledge was obtained without a search.

Argued orally by *Vernon Rowe,* for appellant, and *J. A. Lauderdale,* assistant attorney-general, for the state.

HOLDEN, P. J., delivered the opinion of the court.

J. C. Canteberry appeals from a conviction on a charge of having intoxicating liquor in his possession.

The decisive question in the case is whether or not the testimony of the officer who made the search and found the liquor was admissible in evidence against the accused at the trial. To put it in different words, Does the case come within the rule announced in the *Tucker case,* 90 So. 845, 128 Miss. 211, 24 A. L. R. 1377, which holds that testimony secured by an unlawful search is inadmissible in evidence?

The story of the case may be briefly told as follows: The appellant, Canteberry, rode his horse into the town of Kilmichael and hitched him to a rack in the public square. The city marshal, one Mr. Murphy, saw Mr. Canteberry get off of his horse. When he got off of his horse he was staggering as if somewhat under the influence of liquor. After Canteberry had left his horse to go to a store and transact some business, Murphy approached the horse, and claimed to have smelled intoxicating liquor as he got near the horse. Mr. Canteberry had left a bundle, which was a jumper folded together, tied to the horn of his saddle. Murphy testified that he saw the imprint of a bottle in the jumper, and he took the jumper, searched it, and found a bottle of whisky therein. Murphy had no warrant to search the jumper, nor any other possession of Canteberry, nor did he have any cause to arrest him.

Mr. Canteberry soon returned to his horse, got on him, and rode home, whereupon he discovered that some personal articles he left in the jumper were missing; so he rode back to town and asked the marshal if he had seen anything of his mail he left in the jumper package, whereupon the marshal proceeded to charge him with having intoxicating liquor in his possession. Canteberry denied the charge, but was convicted upon the testimony of Murphy, which was secured without a search warrant, as stated above. This testimony was objected to at the trial.

We think this case comes within the rule announced in the *Tucker case, supra.* The jumper was folded and tied together, and was hanging to the horn of appellant's

saddle. It was a package, or we may say it was a bundle of wearing apparel, and was a personal private possession, and it could not be searched without a warrant first being secured for that purpose; therefore, the testimony of Murphy, which was secured by unlawful search, was inadmissible at the trial.

Murphy did not have the right to search the jumper, because he did not know at that time that it contained liquor. He said he saw the impression of a bottle in the jumper, but that he did not know what the bottle contained; that he merely suspected that liquor was in the jumper because of appearances and the fact that he could smell it in the atmosphere before he reached the horse, and because he had seen the appellant reel when he got off of his horse.

There are several decisions of this court which support the view announced above, and we can see no good purpose to be served in discussing the question, except to say again that the private personal possessions of a citizen cannot be searched unless a warrant is first secured to make the search; and we consider packages in the possession of a person, such as suit cases, grips, bundles of wearing apparel, etc., are private personal possessions which cannot be searched without a warrant, unless the party is first lawfully arrested. None of these conditions appear in this case, and Murphy did not know that the jumper had whisky in it; therefore the judgment of the lower court must be reversed and the case remanded. See *Eli Butler* v. *State,* 101 So. 193, 135 Miss. 885.

*Reversed and remanded.*